# United States Court of Appeals
# for the Sixth Circuit

_____

**Case No. 13-3012**

_____

**LIBERTY COINS, LLC,** *et al.*,

*Plaintiffs-Appellees*,

**v.**

**DAVID GOODMAN,** *et al.,*

*Defendants-Appellants.*

_____

**On Appeal from the United States District Court
for the Southern District of Ohio, Western Division**
_____

**BRIEF OF PLAINTIFFS-APPELLEES**
_____

MAURICE A. THOMPSON, ESQ.
1851 CENTER FOR CONSTITUTIONAL LAW
208 E. STATE STREET
COLUMBUS, OHIO 43215
(614) 340-9817
MThompson@OhioConstitution.org

CURT C. HARTMAN, ESQ.
THE LAW FIRM OF CURT C. HARTMAN
3749 FOX POINT COURT
AMELIA, OHIO 45102
(513) 752-8800

## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTERESTS

Pursuant to 6th Cir. R. 26.1, Plaintiffs-Appellees Liberty Coins, LLC, and Michael Tomaso make the following disclosures:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party: **N/A**

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest: **N/A**


  /s/ Maurice A. Thompson              April 23, 2013
*Maurice A. Thompson*                      *Date*
*Counsel for Plaintiffs-Appellees*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................i

I.  STATEMENT OF JURISDICTION ..................................................1

II.  STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ....................1

III.  SUMMARY OF THE ARGUMENT ................................................2

IV.  STATEMENT OF THE FACTS ...................................................3

   A.  Plaintiffs' Commercial Speech Results in Enforcement Action by Ohio Department of Commerce ............................................................3

   B.  The Ohio Precious Metals Dealers Act ..........................................6

V.  ARGUMENT .........................................................................9

   A.  Standard of Review:  This Court must primarily review the District Court's Order for an abuse of discretion. .............................................9

   B.  The District Court correctly determined that the PMDA must be preliminarily enjoined. ...............................................................10

     i.  The District Court correctly determined that Liberty Coins is likely to prevail on the merits. ..............................................................11

       a.  The PMDA impermissibly regulates in response to protected commercial speech....................................................................11

         1.  The plain language of the PMDA reveals the regulation of speech. .........13

         2.  The word "including" does not change the *nature* of what triggers the regulation:  promotional speech to the public with a specific message.............19

         3.  One can only hold itself out <u>to the public</u> as willing to purchase precious metals through commercial speech. ...............................................20

         4.  The Ohio Legislature has rejected Appellants' proposed construction. ....24

         5.  The Department of Commerce enforces the law in response to commercial speech. ...............................................................................25

       b.  No limiting construction is appropriate or available. ....................27

c.    The PMDA fails to withstand constitutional scrutiny. ...................................32

1.    Liberty Coins is likely to succeed on the merits because the PDMA impermissibly criminalizes protected speech in response to its content and the speaker's identity...........................................................................................32

2.    The PMDA fails *Central Hudson* scrutiny. ...............................................37

a.    The governmental interests cited are not directly advanced by the PMDA. ...........................................................................................39

b.    The PMDA is not narrowly-tailored to advance the government interests cited. ...........................................................................................47

**ii.    The District Court correctly determined that Liberty Coins is faced with irreparable harm. .............................................................................................54**

**iii.    The Public Interest and interests of third parties favor an injunction....55**

**VI.    CONCLUSION .............................................................................................55**

**APPENDIX .............................................................................................57**

## TABLE OF AUTHORITIES

**Cases**

*44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996) .......................................13, 45

*Abramson v. Gonzalez*, 949 F.2d 1567 (11th Cir. 1992) ..............................24, 41

*American Tobacco Co. v. Patterson,* 456 U.S. 63 (1982) ............................32

*Ashcroft v. ACLU,* 542 U.S. 656 (2004) ...............................................11

*Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104 (1991)...............................15

*Baker v. Adams County/Ohio Valley Sch. Bd.*, 310 F.3d 927 (6th Cir. 2002)................56

*Blount v. Rizzi,* 400 U.S. 410 (1971)...................................................32

*Board of Ed. of Westside Cmty. Sch. v. Mergens,* 496 U.S. 226 (1990).........................14

*Bolger v. Youngs Drug Products Corp.,* 463 U.S. 60 (1983) .........................................13

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557
   (1980)...........................................................................39, 40, 42, 51

*Chabad of Southern Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d
   427 (6th Cir. 2004) ...............................................................10

*Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410 (1993) .........................................35

*City of Houston v. Hill,* 482 U.S. 451 (1987) ...............................................39

*Columbus-Suburban Coach Lines v. Public Util. Comm'n*, 20 Ohio St.2d 125 (1969)..18

*Commonwealth Brands, Inc. v. U.S.,* 2009 WL 3754273 (W.D. Ky. 2009) .................14

*Connection Distrib. Co. v. Reno,* 154 F.3d 281 (6th Cir. 1998)................................12, 51

*Dayton Area Visually Impaired Persons, Inc. v. Fisher,* 70 F.3d 147 (6th Cir.1995).....57

*Discount Tobacco City & Lottery, Inc. v. U.S.*, 674 F.3d 509 (6th Cir. 2012)...............14

*Eastwood Mall, Inc. v. Slanco,* 68 Ohio St.3d 221 (1994) .........................................15

*Edenfield v. Fane,* 507 U.S. 761 (1993)....................................................42, 46

*Elrod v. Burns,* 427 U.S. 347 (1976) .......................................................56

*Eubanks v. Wilkinson,* 937 F.2d 1118, (6th Cir. 1991)....................................32

*Frisby v. Schultz*, 487 U.S. 474 (1988) .....................................................53

*Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644 (6th Cir. 2007). ...........................10

*Hill v. City of Houston,* 789 F.2d 1103 (5th Cir.1986) ...........................................33

*Holder v. Humanitarian Law Project,* 130 S.Ct. 2705 (2010) ......................................39

*In re DeLorean Motor Co.*, 755 F.2d 1223 (6th Cir. 1985)....................................50

*Jones v. Caruso,* 569 F.3d 258 (6th Cir. 2009)..............................................57

*Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001) ...........................................40

*Loveless v. Ry. Switching Serv., Inc.,* 106 Ohio App.3d 46..............................22

*Mascio v. Public Emp. Ret. Sys. of Ohio*, 160 F.3d 310 (6th Cir. 1998) .........................11

*McLindon v. Russell* 108 F.Supp.2d 842 (S.D. Ohio 1999) .........................................17

*McPherson v. Michigan High Sch. Athletic Ass'n,* 119 F.3d 453 (6th Cir. 1997) ..........11

*MD II Entertainment, Inc. v. City of Dallas*, 28 F.3d 492 (5th Cir. 1994) ....................20

*Michigan State Chamber of Commerce v. Austin,* 642 F.Supp. 1078 (E.D.Mich.1986).33

*Miller v. City of Cincinnati*, 622 F.3d 524 (6th Cir. 2010) ........................................10, 56

*Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue,* 460 U.S. 575, (1983) ..............................................................................................36

*Moltan Co. v. Eagle-Pitcher Indus., Inc.*, 55 F.3d 1171 (6th Cir. 1995) ........................11

*Naser Jewelers, Inc. v. City of Concord, New Hampshire*, 513 F.3d 27 (1st Cir. 2008) 34

*Newsom v. Norris,* 888 F.2d 371 (6th Cir.1989) ................................................................56

*Pagan v. Fruchey,* 492 F.3d 766 (6th Cir. 2007) .......................................................passim

*Parker v. Com. of Ky., Bd. of Dentistry*, 818 F.2d 504 (6th Cir. 1987) ....................23, 41

*Peel v. Attorney Registration and Disciplinary Commission of Illinois,* 496 U.S. 91 (1990) ................................................................................................41

*Prime Media, Inc. v. City of Brentwood, Tenn.,* 398 F.3d 814 (6th Cir. 2005) ...............13

*Provident Bank v. Wood*, 36 Ohio St.2d 101 (1973) ........................................................14

*R.A.V. v. City of St. Paul,* 505 U.S. 377 (1992) ...............................................................35

*Record Revolution No. 6, Inc. v. City of Parma,* 638 F.2d 916 (6th Cir.1980) ...............33

*Republic of the Philippines v. Marcos*, 862 F.2d 1355 (9th Cir. 1988) ..........................50

*Rubin v. Coors Brewing Co.*, 514 U.S. 476 (1995) .....................................................44, 45

*Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.,* 502 U.S. 105 (1991) ................................................................................................36

*Sloan v. Lemon,* 413 U.S. 825 (1973) ..............................................................................32

*Sorrell v. IMS Health, Inc.*, 131 S.Ct. 2653 (2011) ...........................................35, 37, 51

*Spirko v. Mitchell*, 368 F.3d 603 (6th Cir. 2004) ............................................................41

*Summerville v. Forest Park*, 128 Ohio St.3d 221 (2010) ................................................21

*Thalheimer v. City of San Diego,* 645 F.3d 1109 (9th Cir. 2011) ...................................11

*Thompson v. Western States Medical Center,* 535 U.S. 357 (U.S.,2002) ......................52

*Tinker v. Des Moines Indep. Cmty Sch. Dist,* 393 U.S. 503 (1969) ...............................49

*Triplett Grille, Inc. v. City of Akron,* 40 F.3d 129 (6th Cir.1994) ..................................32

*Tucker v. City of Fairfield, Ohio*, 398 F.3d 457 (6th Cir. 2005) .....................................10

*Turner Broadcasting System, Inc. v. FCC,* 512 U.S. 622 (1994) ..............................35, 48

*Ty, Inc. v. GMA Accessories, Inc.,* 132 F.3d 1167 (7th Cir. 1997) .................................50

*U.S. v. Skilling,* 130 S.Ct. 2896, (2010) .........................................................................31

*United States v. Caronia,* 703 F.3d 149 (2d Cir. 2012) ..................................................37

*United States v. Elder,* 90 F.3d 1110 (6th Cir. 1996) .....................................................41

*United States v. O'Brien*, 391 U.S. 367 (1968) ..............................................................40

*United States v. Playboy Entertainment Group, Inc.,* 529 U.S. 803 (2000) ............36, 39

*United States v. Universal Mgmt. Servs., Inc.*, 191 F.3d 750 (6th Cir. 1999) ...............17

*United States v. Vonn*, 535 U.S. 55 (2002) .....................................................................21

*Valle Del Sol Inc. v. Whiting,* --- F.3d ----, 2013 WL 781704 (9th Cir. 2013)...20, 38, 47

*Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748 (1976)........................................................................................12

*Welsh v. United States,* 398 U.S. 333 (1970) ..................................................................32

**Statutes**

28 U.S.C. § 1292 .......................................................................................... 1
28 U.S.C. § 1331 .......................................................................................... 1
42 U.S.C. § 1983 .......................................................................................... 1
R.C. 1.47 ..................................................................................................... 24
R.C. 2913.51 ............................................................................................... 48
R.C. 4728 .................................................................................................... 54
R.C. 4728.01 ........................................................................................ passim
R.C. 4728.02 ................................................................................................. 7
R.C. 4728.03 ................................................................................................. 8
R.C. 4728.04 ................................................................................................. 9
R.C. 4728.05 ................................................................................................. 8
R.C. 4728.06 ................................................................................................. 8
R.C. 4728.09 ................................................................................................. 9
R.C. 4728.11 ................................................................................... 7, 38, 54
R.C. 4728.12 ................................................................................... 25, 58

**Regulations**

Ohio Admin. Code 1301:8-6-03(D) ............................................................. 9

# I.    STATEMENT OF JURISDICTION[1]

The District Court possessed subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the Plaintiffs-Appellees asserted a federal civil rights claim pursuant to 42 U.S.C. § 1983.[2]

On December 5, 2012, the District Court granted Plaintiffs' motion for a preliminary injunction.[3]  Subsequently, on December 28, 2012, the District Court modified, in part, the preliminary injunction.[4]

On January 4, 2013, the Defendants timely appealed the preliminary injunction.[5] Thus, this Court possess jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(1).

# II.    STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Whether the District Court abused its discretion in granting a preliminary injunction so as to enjoin the Department of Commerce from imposing the Precious Metal Dealers Act, and all of its attendant regulatory burdens, on Ohio businesses in response to their protected commercial speech ("holding oneself out to the public as willing to purchase precious metals").

---

[1]    Appellees ("Liberty Coins") defer to Appellants' Statement of the Case and Request for Oral Argument.

[2]    Complaint, R.1, PageID#1-38.

[3]    Opinion & Order, R.27, PageID#597-624.

[4]    Opinion & Order, R.35, PageID#667-680.

[5]    Notice of Appeal, R.36, PageID# 681.

## III.    SUMMARY OF THE ARGUMENT

Ohio's Precious Metals Dealer Act, virtually unenforced since its inception, by regulating certain Ohio businesses only once they engage in protected commercial speech, impermissibly burdens and suppresses protected commercial speech.  While the Act is not a classic example of an infringement on First Amendment rights, it is well established that the imposition of a regulatory scheme in response to whether a business engages in speech, rather than conduct, violates the commercial speech doctrine established by the United States Supreme Court.  And indeed here, if a business advertises, the Act then invites fines as high as $150,000, warrantless searches and seizures of business owners' property at any time without notice, and record-keeping, reporting, and holding requirements that cripple the operations of an average Ohio coin dealer such as Liberty Coins.

As an initial matter, the Act is a clear regulation of speech:  it imposes this regulatory scheme on one who through advertising or solicitation, "holds himself, herself, or itself out to the public as willing to purchase" precious metals.   And this regulation of speech fails to withstand either heightened or intermediate scrutiny.

First, the Act warrants heightened scrutiny because it authorizes criminal sanction on the basis of who is speaking, and the content of what the speaker indicates.  It is therefore "presumptively invalid."

Second, even if not subjected to heightened scrutiny, the Act's suppression of speech fails intermediate scrutiny.  The speech, most commonly conveyed through

signage communicating a message akin to "We Buy Gold," is entirely truthful, non-misleading, and in the absence of the PMDA, lawful. Further, while the state maintains a substantial interest in taking measures to reduce precious metal-related theft, that interest is not directly advanced by regulating certain business owners' speech rather than directly prohibiting theft. Finally, the Act is not a narrowly tailored means of addressing theft - - it, *inter alia,* regulates speech related to conduct that does not implicate the state's concerns. Meanwhile, the Defendant-Appellants ("Ohio Department of Commerce" or "the DOC") have failed to carry their burden in justifying the Act. Consequently, the District Court's Order enjoining enforcement of the PMDA must be upheld.

## IV.    STATEMENT OF THE FACTS

### A.    Plaintiffs' Commercial Speech Results in Enforcement Action by Ohio Department of Commerce

Michael Tomaso is the owner and operator of Liberty Coins, a business engaged in the buying, selling and trading of silver and gold coins, jewelry, hallmark bars, ingots, and numismatics, through a storefront retail location in Delaware, Ohio.[6] Liberty Coins advertises its business through limited means: (1) a "We Buy Gold" sign in its store window; (2) a freestanding sign outside the store's door indicating "Buying Gold & Silver"; (3) a newspaper advertisement" in the classified section of the *Delaware Gazette* indicating that Liberty Coins is "paying top competitive prices for

---

[6]      Complaint ¶8, R.1, PageID#3.

gold and silver … Buying American and Foreign Coins and Currency ... Buy-Sell-Trade-Singles-Collections-Estates … Professional Numismatist for 35 years"; and (4) Mr. Tomaso's business card, which states, *inter alia*, "American and Foreign Coins and Currency," above "Gold and Silver Scrap" above "Buy-Sell-Trade-Appraisals-Estates" above "35 years professional experience in numismatics."[7]

On October 1, 2012, the Ohio Department of Commerce (the DOC) issued a threat letter to Liberty Coins concerning the alleged violation of Ohio's Precious Metal Dealers Act (the "PMDA").[8] Addressed to Michael Tomaso, the owner of Liberty Coins, the letter from the DOC stated:

> Liberty Coins has held itself out to the public as willing to purchase precious metals via signage at the store location.  Based upon the language of the PMDA, the Division has evidence that your business has violated the PMDA.[9]

The DOC then ordered Liberty Coins to "produce business records" so as to "enable the Division to determine a fine amount consistent with settlements made for similar violations of the law."[10]  The letter concludes that "[i]f you fail to respond to this letter, the Division may issue a cease and desist order that imposes a fine of up to $10,000,"

---

[7]    Complaint ¶¶8 & 43, Exh.B, R.1, PageID#11&34, 35.

[8]    Complaint at ¶¶ 39-42, Exh.B, R.1, PageID#&33.

[9]    Complaint, Exh.B, R.1, PageID#33.

[10]    Complaint, Exh.B, R.1, PageID#33.

and "continued violation of the PMDA may reflect negatively upon the good character and fitness the division must find in order to issue a PMDA license to your business."[11]

In a follow-up e-mail dated October 17, 2012, to Mr. Tomaso, the DOC, through attorney Amanda McCartney, indicated the evidence that the DOC possessed concerning the alleged violation of the PMDA by Liberty Coins:  (1) "We Buy Gold" sign in your store window; (2) "Buying Gold & Silver" freestanding sign outside your store's door; (3) Newspaper advertisements; and (4) Liberty Coins business cards which states "Gold and Silver Scrap, Buy – Sell – Trade"[12]  The DOC maintained that *each of these modes of protected speech* are and were separate "violations [that] can impose a fine and is a first degree misdemeanor for the first offense and a fifth degree felony for each subsequent offense."

And following an exchange of further e-mails, the DOC was clear that such activities must cease.  Attorney McCartney insisted that as a result of Liberty Coins' past promotional speech, "you cannot buy any gold or silver without a license.  You must cease all illegal activities immediately, as *each* violation is subject to a $10,000 fine and criminal sanctions."[13]

---

[11]    Complaint, Exh.B, R.1, PageID#33-34.

[12]    Joint Exhibits, Exh. JXII, R.23-1, PageID#342.

[13]    Joint Exhibits, Exh. JXII, R.23-1, PageID#341.

As a result of the foregoing actions and threats from the DOC, Mr. Tomaso discontinued all promotional speech on behalf of Liberty Coins as well as discontinued certain purchases of gold and silver items, from September 2012 until the District Court preliminarily enjoined the PMDA.[14]

## B.     The Ohio Precious Metals Dealers Act

Although enacted in 1983, the PMDA has been largely unenforced since its inception. Since that time, coin dealers have operated without a license, informally working with local police to resolve occasional stolen property issues.  Since 2011, the Ohio Department of Commerce has renewed enforcement efforts, resulting in submission of threat letters to and the imposition of fines to numerous Ohio coin and precious metals dealers.[15]

But rather than regulating conduct, *i.e*, trafficking of stolen property, the PMDA suppresses and punishes constitutionally-protected commercial speech by (1) prohibiting protected speech without a license; and (2) imposing formidable burdens only upon businesses and individuals who engage in protected speech.    R.C.

---

[14]      11/29/12 Hearing Transcript, at R.26, at 96-97.  The initial contact between the DOC and Mr. Tomaso occurred on August 24, 2012, when an investigator with the DOC first visited Mr. Tomaso's store.  (11/29 Hearing Transcript, R. 26, at 55-56.)  During the course of that visit, the DOC investigator took pictures of the various advertisement signs of Liberty Coins. (11/29 Hearing Transcript, R.26, at 55-57.)

[15]      11/29/12 Hearing Transcript, R.26, at 62.  Through its recent efforts to enforce the PMDA, the DOC has, as a condition for issuance of a license, attempted to impose fine of up to $150,000 and imposed fines of up to $30,000 against businesses who elected to submit to the DOC's effort.  (11/29 Hearing Transcript, R.26, at 35-43; Joint Exhibits, Exh. DXY, R.23-4, PageID#441-445.)

4728.02(A) dictates that "no person shall act as a precious metals dealer without first having obtained a license from the division of financial institutions in the department of commerce." In turn, one is only held to "act as a precious metal dealer," and therefore subject to the numerous burdens of the Act, *if and only if* he or she engages in speech protected by the First Amendment - - the Act defines "precious metal dealer" as follows:

> a person who is engaged in the business of purchasing articles made of or containing gold, silver, platinum, or other precious metals or jewels of any description <u>if, in any manner, including any form of advertisement or solicitation of customers, the person holds himself, herself, or itself out to the public as willing to purchase such articles.</u>[16]

Purchasers of precious metals who do not advertise or otherwise promote the fact that they purchase such items are exempt from the Act, as are, pursuant to R.C. 4728.11, jewelers, antique dealers, and bankers.

The burdens imposed on those who advertise are significant. *First*, promotional speech is *prohibited* unless one first obtains a PMDA license. But the path to such a license is costly, vague, and arbitrary. To be eligible for such a license, and transitively, to advertise for one's precious metals business, the applicant must first disclose considerable personal, professional, and financial information to the state, including, for instance a list of all assets and liabilities owned by the proprietor.[17] Additionally, the applicant must "have good character," as adjudged by the unguided discretion of the

---

[16]    R.C. 4728.01(A).

[17]    Joint Exhibits, Exh. DXT, R.23-4, PageID#403-420.

Ohio Department of Commerce.[18]  An applicant is further judged by his "reputation" and "ability to maintain net worth during the licensure period."[19]  Finally, in response to his speech and before he may engage in further business or protected speech, the applicant must pay the state a fee of up to $550.[20]

Next, if one gains the right to promote his or her business through speech-triggered licensure, he or she is then subjected to constitutionally-questionable warrantless searches without probable cause.  R.C. 4728.05(A) subjects those who speak to plenary government investigation, for the purposes of which, the state shall have "free access to books and papers * * * and other sources of information." R.C. 4728.05(B) subjects those who advertise to "at any time" and for any reason, compelled attendance for depositions and compelled production of all books, records, and documents.  Finally, Ohio Admin. Code 1301:8-6-03(D), governing precious metals dealers, disbands with all constitutionally-required safeguards by permitting inspection of all business records at any time for ensuing broadly and generally that "the business of the licensee is being transacted in accordance with law."

Meanwhile, R.C. 4728.06 subjects those who speak to the requirements of (1) keeping government-approved books and forms; (2) compelled disclosure of each and every item purchased and physical description of the seller of each such item; (3)

---

[18]     R.C. 4728.03(B).

[19]     R.C. 4728.03(A), (B)(1).

[20]     R.C. 4728.03(C).

keeping one's books "in order" and "open to inspection" at all times; and (4) transmitting to the local police department, on each and every business day, a comprehensive list of every item purchased by the business.

Further, despite an industry that features dramatic fluctuations in price and low margins, R.C. 4728.09(A) requires those who speak to hold all gold and silver items purchased for five days from the date of purchase. Finally, R.C. 4728.04 stringently limits the locations where legitimate transactions in and of gold and silver, by those who advertise, can occur:  such transactions are prohibited anywhere other than the licensee's physical store location and certain limited auctions, conventions, and exhibitions that are "for the primary purpose of trading precious metals."  Obviously, these regulations result in significant burdens for those who purchase and advertise for the purchase of gold and silver items.

## V.    ARGUMENT

### A.    Standard of Review:  This Court must primarily review the District Court's Order for an abuse of discretion.

The DOC contends that a *de novo* review should be conducted.[21]  However, "[t]his Court normally reviews a district court's decision regarding a preliminary injunction for an abuse of discretion."[22]  And this Court has repeatedly subjected the *granting* of preliminary injunctions, even in cases involving the First Amendment, to an abuse of

---

[21]    Appellants' Brief, at p. 10.

[22]    *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007).

discretion review.[23]  Furthermore, "when a district court grants a preliminary injunction protecting First Amendment rights, '[i]f the underlying constitutional question is close ... [an appellate court will] uphold the injunction and remand for trial on the merits.'"[24]

"A district court abuses its discretion when it relies on clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard."[25]  Accordingly, an "injunction will seldom be disturbed unless the district court relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard."[26] Thus, this Court "will reverse a district court's weighing and balancing of the equities only in the rarest of circumstances."[27]  Such circumstances are not present here.

### B.    The District Court correctly determined that the PMDA must be preliminarily enjoined.

As for consideration of the issue in this case, *i.e.*, whether the District Court abused its discretion is issuing the preliminary injunction, this Court should consider the

---

[23]     *See*, *e.g.*, *Miller v. City of Cincinnati*, 622 F.3d 524, 533 (6th Cir. 2010); *Tucker v. City of Fairfield, Ohio*, 398 F.3d 457 (6th Cir. 2005); *Chabad of Southern Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004).

[24]     *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1128 (9th Cir. 2011)(quoting *Ashcroft v. ACLU*, 542 U.S. 656, 664–65 (2004)).

[25]     *Tucker*, 398 F.3d at 461.

[26]     *Chabad*, 363 F.3d at 432 (quoting *Mascio v. Public Emp. Ret. Sys. of Ohio*, 160 F.3d 310, 312 (6th Cir. 1998)).

[27]     *Id.* (quoting *Mascio*, 160 F.3d at 312 (quoting *Moltan Co. v. Eagle-Pitcher Indus., Inc.*, 55 F.3d 1171 (6th Cir. 1995)).

four, well-established factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a temporary restraining order or preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of a temporary restraining order or preliminary injunction.[28] But "[w]hen a party seeks a preliminary injunction on the basis of the potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor."[29]

### i. The District Court correctly determined that Liberty Coins is likely to prevail on the merits.

#### a. The PMDA impermissibly regulates in response to protected commercial speech.

The First Amendment, as applied to the States through the Fourteenth Amendment, protects commercial speech from unwarranted governmental regulation.[30] As this Court articulated in *Pagan v. Fruchey,* "[w]hile other forms of expression are entitled to more protection under the First Amendment than is commercial speech, the

---

[28]    *McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997)(*en banc*).

[29]    *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).

[30]    *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 761-762 (1976).

protection provided to commercial speech is nevertheless considerable."[31] In *44 Liquormart, Inc. v. Rhode Island*, the Supreme Court expressly rejected the concept that because the government had the power to extensively regulate in a certain area . . . it also had the authority to regulate speech without raising First Amendment concerns.[32] Instead, the Court expressly declared that "[t]he text of the First Amendment makes clear that the Constitution presumes that attempts to regulate speech are more dangerous than attempts to regulate conduct. That presumption accords with the essential role that the free flow of information plays in a democratic society."[33]

Further, promotional activity is to be analyzed as commercial speech.[34] "[S]igns, it is clear, represent a medium of expression that the Free Speech Clause has long protected."[35]

Initially, the DOC posits that the PMDA does not seek to regulate or implicate commercial speech but, instead, claims the PMDA is exclusively a regulation of commercial activity.[36] But under clear precedent from the Supreme Court and this Court, "regulations that are triggered solely by speech are in fact regulations of

---

[31]     *Pagan v. Fruchey,* 492 F.3d 766, 770 (6th Cir. 2007).

[32]     *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, at 509-512 (1996).

[33]     *Id.* at 512.

[34]     *Bolger v. Youngs Drug Products Corp.,* 463 U.S. 60, 67 (1983).

[35]     *Prime Media, Inc. v. City of Brentwood, Tenn.,* 398 F.3d 814, 818 (6th Cir. 2005).

[36]     Appellants' Brief, at pp. 13-19.

speech."[37]  And a review of both the language of the PMDA, as well as the enforcement

actions of the DOC, demonstrate that the PMDA is a regulation of commercial speech.

### 1. The plain language of the PMDA reveals the regulation of speech.

The initial place to consider the scope and application of the PMDA is the statute

itself.  In so doing, the District Court correctly concluded that the PMDA regulates on

the basis of speech, rather than conduct.[38]

Doing so was consistent with the basic tenets of statutory construction.  In

resolving questions of statutory interpretation, "courts must first look to the language of

the statute itself."[39]  For "[e]very word in the statute is presumed to have meaning, and

[courts] must give effect to all the words to avoid an interpretation which would render

words superfluous or redundant."[40]

---

[37]     *Commonwealth Brands, Inc. v. U.S.,* 2009 WL 3754273 (W.D. Ky. 2009). On appeal, this Court endorsed this reasoning.  *See Discount Tobacco City & Lottery, Inc. v. U.S.*, 674 F.3d 509 (6th Cir. 2012).

[38]     Order & Opinion, R.27, at 12, PageID#608 ("engaging in commercial speech is precisely what triggers the licensing requirement, and therefore, the Act is not merely a regulation of conduct"") & at 14, PageID#610 ("the Act is a prohibition of conduct that only applies to persons who engage in commercial speech").

[39]     *Board of Ed. of Westside Cmty. Sch. v. Mergens,* 496 U.S. 226, 237 (1990); *accord Provident Bank v. Wood*, 36 Ohio St.2d 101, 105 (1973).

[40]     *Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 112 (1991); *accord Eastwood Mall, Inc. v. Slanco*, 68 Ohio St.3d 221, 225 (1994).

In this case, the plain language of the PMDA is at variance with the DOC's preferred construction, *i.e.*, that the PMDA doesn't regulate or implicate commercial speech.  Rather than simply regulating conduct, the PMDA clearly suppresses and punishes constitutionally-protected commercial speech by (1) prohibiting such protected speech without a license; and (2) imposing formidable burdens only upon businesses and individuals who engage in such protected speech.  The PMDA promulgates that "no person shall act as a precious metals dealer without first having obtained a license from the division of financial institutions in the department of commerce."[41]  In turn, a "precious metal dealer" is defined as

> a person who is engaged in the business of purchasing articles made of or containing gold, silver, platinum, or other precious metals or jewels of any description *if, in any manner, including any form of advertisement or solicitation of customers, the person holds himself, herself, or itself out to the public as willing to purchase such articles.*[42]

Thus, in order to be a "precious metal dealer" as that term is used in the PMDA, a business must do something more than simply engage in the business of purchasing articles made of or containing gold, silver, *etc.*  Otherwise, the ensuing and limiting phrase in the definition starting with "if" would be a nullity.  And while the DOC now recognizes that "the word 'if' [in the definition of 'precious metal dealer'] narrows the

---

[41]     R.C. 4728.02(A).

[42]     R.C. 4728.01(A)(emphasis added).

class of those engaged in the business of buying precious metals,"[43] in its ensuing argument, the DOC essentially ignores the presence and importance of the word "if" in the definition.[44]

The only argument posited by the DOC as to other means by which one "holds oneself out" is through initial aspect of the definition of "previous metal dealer," *i.e.*, engaging in the business of purchasing articles made of or containing precious metals.[45] The absurdity of the DOC's circular argument was appropriately recognized by the District Court:

> Defendants' argument ignores the plain language of the Act. . . .  The word "if," following the phrase "engaged in the business of purchasing articles" signifies that the mere purchase of such articles is not enough to make one a precious metal dealer; something more is required.  That something more is the "holding out."  If "engaging in the purchase" could be a form of holding out, the entire clause after the word "if" would be superfluous.  Under Defendants' interpretation, the Act could [be] read that one is a precious metals dealer when one engages in the business of purchasing certain articles if one, in any manner, purchases such articles.  Such a reading is nonsensical.[46]

---

[43]    Appellants' Brief, at p. 13.

[44]    Appellants' Brief, at pp. 13-19.

[45]    Appellants' Brief, at p. 16 ("[o]ne holds oneself out to the public as willing to buy precious metals simply through his or her manner and custom of buying precious metals"); Appellants' Brief, at p. 21 ("[t]hose engaged in the business of buying precious metals hold themselves out to the public as willing to do so by non-speech means, such as operating and conducting business openly"). Additionally, but for the first time on appeal, the DOC also argues that "[h]olding oneself out also includes acting as a broker, middleman, or other facilitator of precious metals transactions." (Appellants' Brief, at p. 16.) But "[t]his court will not decide issues or claims not litigated before the district court." *United States v. Universal Mgmt. Servs., Inc.*, 191 F.3d 750, 758 (6th Cir. 1999).

[46]    Opinion & Order, R. 27, at 11-12, PageID#607-08.

Indeed, in *McLindon v. Russell,* the District Court analyzed a statute indicating "*if* the award of attorney's fees is *not greater than* 150 percent of the judgment, the excess shall be paid by the defendant." The Court explained "[t]he word "if" is a conditional word meaning "in the event that."[47] The Court continued "[c]onstruing this provision to apply in the instant case would render meaningless the word 'if' because the condition which follows, to wit, an 'award of attorney's fees ... not greater than 150 percent of the judgment' simply does not exist in this case. Moreover, use of the word 'If' implies the existence of a second alternative, an award of attorney's fees greater than 150% of the judgment."[48]

The same simple principle applies here. The PMDA burdens are only imposed on those who purchase precious metals "<u>if</u>" they <u>then</u> hold themselves out to the public through means such as advertising. And this implies the "second alternative" that if the purchaser of precious metals *does not* so hold himself out, he is *not* subject to the PMDA, irrespective of the quantity of precious metal he purchases. Thus, Appellants' proposed construction of the PMDA would render the conditional phrase beginning with "if" entirely meaningless, thereby transgressing the plain language, any reasonable construction of the text, and the axiom that all words in statute must be given meaning

---

[47]    108 F.Supp.2d 842 (S.D. Ohio 1999), citing Webster's Third New International Dictionary (1986), p. 1124.

[48]    Id.

and effect.  Stated otherwise, the DOC offers a proposed construction of the definition

of "precious metals dealer" that looks like this:

> a person who is engaged in the business of purchasing articles made of or
> containing gold, silver, platinum, or other precious metals or jewels of any
> description ~~if, in any manner, including any form of advertisement or
> solicitation of customers, the person holds himself, herself, or itself out to
> the public as willing to purchase such articles~~.

However, neither a state agency nor a federal court may not simply strike through a

substantive portion of a duly-enacted statute when construing or enforcing it.  Instead,

"in determining the legislative intent of a statute it is the duty of this court to give effect

to the words used in a statute, *not to delete words used*, or to insert words not used."[49]

Thus, the PMDA clearly seeks to subject to regulation those who engage speech.

The statutory construction offered the DOC was appropriately characterized by the

District Court as being "nonsensical."

In fact, this Circuit Court, *en banc*, has already rejected Appellants' exact

reasoning in *Pagan v. Fruchey*.  There, the state defendants attempted to defend an

ordinance prohibiting the placement of "for sale" signs in cars parked on city streets by

asserting that *the regulation governed the conduct of parking, rather than speech*.  This

Court soundly rejected such reasoning:

> At the outset, we note appellees' suggestion that subsection (A) of the
> ordinance does not implicate the First Amendment because it prohibits the
> act of parking a vehicle on Glendale's roadways for the purpose of
> displaying it for sale.  As a result, <u>appellees contend, the ordinance</u>

---

[49]    *Columbus-Suburban Coach Lines v. Public Util. Comm'n*, 20 Ohio St.2d 125, 127
(1969).

17

regulates commercial activity and not speech. Under appellees'
construction, a seller's chosen means of advertising a desire to sell ( *e.g.,*
posting a "For Sale" sign, placing a classified ad, advertising online, etc.) is
irrelevant. The act of placing a car on the street for the purpose of
displaying it for sale purportedly violates subsection (A). Appellees'
argument on this point is not well taken. * * * we must determine whether
or not Glendale has constitutionally prohibited the posting of "For Sale"
signs on cars parked in its streets.[50]

Similarly, and very recently, in *Valle Del Sol Inc. v. Whiting,* the Ninth Circuit

concluded that a regulation of day labor *solicitation* constituted an impermissible

regulation of commercial speech.  The Court explained "[a] motorist who pulls over and

either hires or attempts to hire a day laborer has proposed a commercial transaction.  By

the same token, a day laborer soliciting work from the roadside proposes a commercial

transaction.  Because the day labor provisions are explicitly limited to attempts to hire,

hiring, picking up and transporting workers to work at a different location, all affected

speech is either speech soliciting a commercial transaction or speech necessary to the

consummation of a commercial transaction."[51]  Accordingly, because "two provisions in

Arizona's Senate Bill 1070 make it unlawful for a motor vehicle occupant to hire or

attempt to hire a person for work at another location from a stopped car that impedes

traffic, or for a person to be hired in such a manner," and "[t]hese provisions raise First

---

[50]     492 F.3d 766 (6th Cir. 2007)(*en banc*).

[51]     --- F.3d ----, 2013 WL 781704, (9th Cir. 2013).

Amendment concerns because they restrict and penalize the commercial speech of day laborers and those who would hire them."[52]

Likewise, the PMDA's licensing regime is effectively identical in structure to the licensing scheme recently invalidated under the commercial speech doctrine in *MD II Entertainment, Inc. v. City of Dallas*.[53]  There, the Court considered a regulatory scheme that imposed licensing burdens in response to advertising.  The Court first found that "the ordinance regulates speech," explaining that "[u]nder the ordinance, businesses which use certain terms in their advertising must close and relocate, while businesses which do not use those terms are unaffected. The connection is one of cause and effect: the City says MD II must close The Fare West because of the advertising it employs. Section 14-1(5)(B) plainly is a regulation of speech."[54]  Thus, the plain language of the PMDA reveals a regulation of speech.

## 2. The word "including" does not change the *nature* of what triggers the regulation:  promotional speech to the public with a specific message.

As the Supreme Court of Ohio recently explained in *Summerville v. Forest Park*, "[t]he canon *expressio unius est exclusio alterius * * ** has force only when the items expressed are members of an 'associated group or series,' justifying the inference that

---

[52]    Id.  ("Section 5(A) makes it a crime for an occupant of a motor vehicle to solicit or hire a day laborer if the motor vehicle blocks or impedes traffic").

[53]    28 F.3d 492 (5th Cir. 1994).

[54]    Id.

items not mentioned were excluded by deliberate choice, not inadvertence."[55]  Here, the statue lists several means as examples of "holding oneself out to the public as willing to purchase precious metals."  Those examples are "any form of advertisement," and "any form of solicitation of customers."  The drafters of the statute thus have made very clear the types of occurrences that will trigger application of the PMDA.  And each is an example of promotional speech.  Examples of like-kind activities that would trigger the PMDA's application are "broadcasting," "marketing," "promoting," and "publicizing." These are all vastly different from "purchasing."[56]  Further, the "holding out" through this means must be "to the public," and must communicate an express "willingness to purchase precious metals."

### 3. One can only hold itself out <u>to the public</u> as willing to purchase precious metals through commercial speech.

Importantly, the statute regulates not merely on the basis of "holding oneself out," as Appellants repeatedly assert, but rather "holding oneself out _to the public_."  The word "public" is not defined in the PMDA; and thus, the plain meaning of the term applies. Black's Law Dictionary defines "public" as "1. The people of a nation or community as

---

[55]     128 Ohio St.3d 221 (2010), citing _United States v. Vonn_ (2002), 535 U.S. 55, 65.

[56]     By leaving out any indication that the statute is triggered by actual purchases of precious metals alone, the statue, on its face, defeats the notion that an actual purchase of precious metals alone is holding oneself out to the public.  There are entirely rational explanations as to why the Ohio General Assembly may have endeavored to make such a distinction, particularly in an era where the commercial speech doctrine was less well-recognized and developed - - they may have wished to address only large, well-organized purchasers, and used advertising as a surrogate.

a whole."[57]    Meanings adopted by Ohio Courts reinforce this.  In *Loveless v. Ry. Switching Serv., Inc.,* the Court explained that "'holding out to the public' means 'holding out to the public at large.'"[58]

Thus, holding oneself out to the public - - *perhaps* as distinguished as holding oneself out to a particular individual in response to an inquiry - - to convey the specific message that one is willing to purchase precious metals necessarily involves commercial speech such as promotion, broadcasting, advertising, or solicitation.  This greatly reinforces the conclusion that one must engaged in commercial speech to fall within the PMDA's purview - - holding oneself out *to the public* as willing to purchase requires speech above and beyond those of the individualized transactions Appellants reference. Thus Appellants are unlikely to succeed.

Further, commercial speech precedent from this circuit and others confirms that the phrase "holding oneself out to the public" implicates speech.  In *Parker v. Com. of Ky., Bd. of Dentistry*, this Circuit analyzed as a regulation of commercial speech a prohibition on a dentist "hold[ing] himself out to the public as being especially qualified in any branch of dentistry without having obtained a license as a specialist therein from

---

[57]    Black's Law Dictionary, Fourth Pocket Edition(2011), p. 611.

[58]    106 Ohio App.3d 46.

the board."[59]   There, this Circuit explained: "In the instant case, the state has unconstitutionally restricted commercial speech in furthering its interests."[60]

Similarly, in *Abramson v. Gonzalez,* the Eleventh Circuit Court of Appeals analyzed an analogous regulation to the PMDA providing that, even though "[n]o laws in Florida prevent anyone from practicing psychology or one of the allied fields," a person not licensed is prohibited from holding himself or herself out" to the public in certain ways.[61]  The Court characterized the limitation as a "regulation of professional advertising by unlicensed psychologists" that "is unconstitutional under the first amendment,"[62] since "only those who have met the examination/academic requirements of the statutes can *say* that they are doing so or hold themselves out as psychologists or allied professionals in advertising, telephone directories, office signs or stationery."[63]

Moreover, Appellants' position requires the Court to read the PMDA as though the word "public" does not exist.  However, R.C. 1.47 (B) states that "[i]n enacting a statute, it is presumed that the entire statute is intended to be effective."  And the legislature deliberately chose "holding oneself out *to the public*" over "holding oneself out."

---

[59]     818 F.2d 504 (6th Cir. 1987).

[60]     *Id.*, at 511.

[61]     949 F.2d 1567 (11th Cir. 1992).

[62]     Id.

[63]     Id.

Finally, the United States Supreme Court has observed that the issue of whether the manner of expression is public or private may play a considerable role in determining the extent of constitutional protection. In *United States v. O'Brien,* relied upon by the Appellants, the Court reasoned that while private expressive conduct may not always be protected speech, public expression is clearly made to convey a message, and is thus quintessential First Amendment activity.[64]

Similarly here, as the District Court observed, "[t]he Ohio Act does not make it illegal to purchase precious metals without a license, but only those with a license may hold themselves out to the public as willing to do so."[65]    "The Act is a prohibition of conduct that only applies to persons who engage in commercial speech.    Because commercial speech is singled out and directly burdened by the Act. . . Central Hudson is the proper standard for review."[66]

Consequently, any reasonable construction of the PMDA and all reliable evidence before the District Court and now this Court indicate that the PMDA is a speech-triggered regulatory scheme.    On these bases alone, First Amendment scrutiny applies, and Appellants are unlikely to prevail on the merits.

---

[64]    *O'Brien,* supra. ("there is nothing necessarily expressive about such conduct. The Amendment does not distinguish between public and private destruction, and it does not punish only destruction engaged in for the purpose of expressing views.")

[65]    Opinion&Order, R.27, at p. 14, PageID#610.

[66]    Id.

**4. The Ohio Legislature has rejected Appellants' proposed construction.**

The Ohio General Assembly <u>knew how to write a definition with the meaning Appellants ascribe to R.C. 4728.01(A), and deliberately rejected using it there</u>.  This is proven by the language that the legislature uses to define the individuals and businesses regulated elsewhere in the PMDA - - by R.C. 4728.12.  Division (A) of *that* section regulates "a person * * * who in the ordinary course of the person's business obtains ownership by purchase of articles made of or containing gold, silver, platinum, or other precious metals or jewels of any description from the public."  This language is *exactly* how Appellants now request this Court to construe the differently-written R.C. 4728.01(A).  That the legislature knew how to craft such a definition, and used it elsewhere, but deliberately refrained from using it in R.C. 4728.01(A), is strong evidence that the legislature fully intended PMDA regulations to be triggered on the basis of speech.

Moreover, the District Court correctly found that the Ohio General Assembly deliberately added and removed certain elements, including the requirement of commercial speech, to the definition of what constitutes a licensable and criminally punishable "precious metals dealer":  "Just as the legislature removed the requirement that the purchase of precious metals had to be for the purpose of smelting. . . it added a requirement that precious metals dealers hold themselves out in order to come within the regulation.  If anything, the additional language implies that in this version, the

Legislature intended to *limit* the category of persons subject to the licensing requirement, and therefore, criminal liability."[67]

### 5. The Department of Commerce enforces the law in response to commercial speech.

The District Court accepted evidence regarding how the Department of Commerce has enforced the law, and quite reasonably concluded that it is *only once a business promotes that it purchases precious metals* that regulations are imposed upon it.[68] In Liberty Coins' case, as articulated above, signs, business cards, and newspaper advertisements constituted "violations" of the PMDA.[69]

As further examples, Exhibits introduced at the preliminary injunction hearing revealed "signage at the store location" as the reason for the "violation" of the PMDA by other Ohio businesses. In fact, evidence was introduced indicating that the Department of Commerce's default template for its PMDA enforcement letter, actually served upon Ohio business owners, indicates "Based upon the language of the PMDA, you have violated the PMDA as evidence by the following:  You have *posted signs* at your business that indicate you pay cash for gold."[70] And testimony of witnesses at the

---

[67]    District Court's December 28, 2012 Opinion and Order Modifying Preliminary Injunction, R.35, at p. 7, 14, Footnote 2, PageID#673.

[68]    Verified Complaint at ¶¶ 43-49 and Exhibit A.

[69]    Id. at ¶ 43, 44, and Exhibits A, D.

[70]    Plaintiffs' Exhibit D, letter to Williams Jewelers, introduced at preliminary injunction hearing.

preliminary injunction hearing further confirmed that the PMDA is triggered by speech: Brian Landis, who oversees PMDA investigation and examinations, testified that he took pictures of the "we buy gold" and "buying gold and silver" signs in front of Liberty Coins because "[i]t's part of the documentation of whether or not they're advertising;"[71] and "[t]hey are evidence of what I saw there that I feel is a violation of the advertising, correct;"[72] and businesses do indeed "violate[] the PMDA when they have "*posted signs at [their] business that indicate [they] pay cash for gold.*"[73]

Further yet, the Department of Commerce, in its discover responses, unquestionably establishes that the PMDA is triggered by speech, such as advertising and solicitation.  First, Response to Plaintiffs' Request for Admission No. 1 confirms that all of Amanda McCartney's statements in October 17 and 19 emails "are accurate statements of law."[74]  (Amongst those statements of law is the unambiguous characterization of signage, business cards, and newspaper advertisements as "violations" of the PMDA that prevent further purchase or advertising for the purchase of *any* precious metals without a PMDA license).  Response to Plaintiffs' Request for Admission No. 7 indicated "[if] a purchaser of precious metals is not exempt or duly

---

[71]    11/29/12 Hearing Transcript, R.26, at 56, PageID#529.

[72]    Id., at 57-58.  PageID#530-31.

[73]    Id., at 61-62  PageID#534-35.

[74]    Plaintiffs' Exhibit F, Defendants' Responses to Plaintiffs' Requests for Admissions.

26

licensed under Chapter 4727 [sic] of the Revised Code, <u>he may not make the public aware of his interest in purchasing precious metals without first obtaining a license</u>."[75]

In addition, testimony of enforcement agents at the November 29, 2012 hearing (Amanda McCartney, the Department of Commerce consumer finance attorney who enforced the law against Plaintiffs,[76] and Brian Landis, who oversees PMDA investigation and examinations) conceded that "Holding yourself out, whether it's -- one of those reasons could be advertisements. That is considered violation of the Precious Metals Dealers Act,"[77] and Mr. Landis, referring to the language from the letter Defendants sent to Williams Jewelers, testified that it was a "proper application" of the PMDA, as he enforces it in the field, to conclude that an entity had "violated the PMDA as evidenced by the following: you have posted signs at your business that indicate you pay cash for gold."[78]   This evidence of enforcement solely targeted at speech demonstrates that Appellants are unlikely to succeed on the merits.

### b.  *No limiting construction is appropriate or available.*

Finally, in an entirely new argument, Appellants contends that this Court should adopt a limiting construction to "save" the PMDA from its own unconstitutionality.[79]

---

[75]     Id.

[76]     11/29/12 Hearing Transcript, R.26, at 3-4, 25.  PageID#476-77&498.

[77]     Id., 5.  PageID#478.

[78]     Id., at 61-62, PageID#534-35.

[79]     Appellants' Brief, at pp. 21, 28.

However, the District Court correctly held that the portion of the definition of "precious metals dealer" referencing commercial speech is not severable; and for the same reasons, it cannot be deleted through a limiting construction.

The District Court correctly recognized that while cases [authorizing a limiting construction have] *limited* the effect of the statutory provisions at issue. . . [s]triking the clause stating 'if in any manner . . . the person holds himself, herself, or itself out to the public as willing to purchase such article'. . . would, as Defendants admit, great expand the definition of 'precious metals dealer' such that a license would be required for anyone who is engaged in the business of purchasing the types of articles defined in R.C. 4728.01(A)."[80]   And as the District Court further noted, Ohio precedent firmly states "a court cannot cure such invalidity merely by striking such limiting language, if the elimination of such limiting language *would substantially extend the operation of the legislative enactment beyond the scope contemplated by all the language of such legislative encroachment*."[81]  "Expanding the definition  of precious metals dealer" and "rewriting the definition" are actions the District Court properly refused to undertake.[82]

Indeed, the construction Appellants advance here is not "limiting":  <u>it actually *expands* the scope of criminal liability under the statute well beyond what the legislature</u>

---

[80]     District Court's December 28, 2012 Order Modifying Preliminary Injunction, R.35, p. 6, PageID#672.

[81]     Id., at p. 7, PageID#673.

[82]     Id.

<u>has done</u>.  R.C. 4728.99 states "whoever violates Chapter 4728 of the Revised Code is guilty of a misdemeanor of the first degree on a first offense and a felony of the fifth degree on each subsequent offense."  One can violate the PMDA, and thus subject oneself to this criminal liability, by acting as a "precious metals dealer" without obtaining a license.  Appellants ask this Court to remove the requirement that one purchase <u>and</u> advertise to be subject to the PMDA, and instead write the Act so as to apply to all who merely purchase.  Thus, Appellants ask this Court to *expand* the scope of who can be prosecuted and imprisoned from only those purchasers of precious metals who advertise to all purchasers of precious metals.  Specifically, under Appellants' proposal, those who are merely "engaged in the business of purchasing articles made of [precious metals]" can be prosecuted and imprisoned if they do not obtain a PMDA license.  Juries could convict an Ohio business person on one element, rather than having to find two.

However, this category of persons includes many persons not subjected to criminal liability under the Act *actually written* by the legislature, including those who regularly purchase precious metals but do not hold themselves out to the public.  It is simply well-beyond the proper function of the judiciary to <u>create these new crimes not created by the legislature</u>, and particularly when those crimes are *felonies*.  And of course the purpose of a "limiting" or "narrowing" construction is to "limit" or "narrow"

the reach of the statute, rather than to expand it.[83]  This Circuit opposes "creat[ing] a program quite different from the one the legislature actually adopted,"[84] and Appellants' construction must thus be rejected.

Further, this Circuit will "not rewrite statutes to create constitutionality,"  and so will not "accept a construction where to do so would amount to rewriting state or local law—an enterprise the federal courts are not empowered to undertake."[85]  This Circuit affirms "the general federal rule is that courts do not rewrite statutes to create constitutionality,"[86] since "[h]ow or whether [a state] is to incorporate the required procedural safeguards in the statutory scheme is, of course, for the State to decide."[87]

Moreover, this Circuit "has sounded a note of caution even about eliminating unconstitutional conditions when a federal court reviews *state* statutes."[88]  This reflects a "general reluctance for federal courts to make policy decisions in relation to state

---

[83]    *U.S. v. Skilling,* 130 S.Ct. 2896, 2933 (2010).

[84]    *Eubanks,* infra., citing *Sloan v. Lemon,* 413 U.S. 825, 834 (1973).

[85]    *Triplett Grille, Inc. v. City of Akron,* 40 F.3d 129, 136 (6th Cir.1994).

[86]    *Eubanks v. Wilkinson,* 937 F.2d 1118, (6th Cir. 1991); *See American Booksellers Assn.,* 484 U.S. at 397 (stating that "we will not rewrite a state law to conform it to constitutional requirements"); *Blount v. Rizzi,* 400 U.S. 410, 419 (1971) (declaring that "it is for Congress, not this Court, to rewrite the statute").

[87]    *Freedman,* 380 U.S. at 60; *See also American Tobacco Co. v. Patterson,* 456 U.S. 63, 75. (1982) (Court noted its own prior decisions that had "refused to narrow § 703(b) by reading into it limitations not contained in the statutory language").

[88]    *Eubanks,* supra; See, e.g., *Welsh v. United States,* 398 U.S. 333, 363 n. 15 (1970) (noting the Court's more limited discretion "to extend a policy for the States even as a constitutional remedy").

statutes. Thus, the rule that courts are not to redraft statutes to preserve constitutionality remains generally applicable."[89]   To that end, this Circuit has ruled that "[a] federal court must always be aware of the federalism concerns that arise whenever it deals with *state* statutes. 'The principles of federalism forbid a federal appellate court to arrogate the power to rewrite a [state or]municipal ordinance.'"[90]   Indeed, this Circuit holds "Federal courts lack authority and power to give a limiting, narrowing construction to a *state* statute;"[91] a federal court "has very limited powers in construing state statutes or municipal ordinances;"[92] and "a federal court must take the state statute or municipal ordinance as written and cannot find the statute or ordinance constitutional on the basis of a limiting construction supplied by it."[93]

Appellants' construction, as explained above, not only requires this Court to expand criminal liability, but further requires it to delete the significant portion of the definition of "precious metal dealer" beginning with the word "if," and then referencing

---

[89]     Id.

[90]     *Hill v. City of Houston,* 789 F.2d 1103, 1112 (5th Cir.1986) *aff'd,* 482 U.S. 451 (1987).

[91]     *Eubanks,* supra., at 1125.

[92]     *Record Revolution No. 6, Inc. v. City of Parma,* 638 F.2d 916, 926 (6th Cir.1980).

[93]     *Id. See also Michigan State Chamber of Commerce v. Austin,* 642 F.Supp. 1078, 1079 (E.D.Mich.1986) (District Court asserting that it could not "authoritatively narrow Michigan's statute" and that "[j]udicial construction cannot save Michigan's statute because the statute needs substantial revision").

commercial speech.  Thus, no true "limiting construction" is available; and this Court should not rewrite the PMDA as Appellants request.

### c.  The PMDA fails to withstand constitutional scrutiny.

If the DOC has not waived the argument, it has certainly failed to carry its burden in demonstrating that the PMDA's suppression of commercial speech withstand *Central Hudson* scrutiny, much less the heightened scrutiny demanded here by *Sorrell*.

## 1. Liberty Coins is likely to succeed on the merits because the PDMA impermissibly criminalizes protected speech in response to its content and the speaker's identity.

Heightened scrutiny of the Act's suppression of speech is required, and the PMDA licensing scheme is presumptively invalid.   "A threshold question in cases involving challenges to government restrictions on speech is whether the restriction at issue is content-neutral or, to the contrary, is content-based."[94]  In the present case, the PMDA clearly seeks to regulate speech based upon the content of the message: communications broadcasting an interest in purchasing precious metals.   Because government regulation of content is one of the primary evils contemplated by the First Amendment, content-based restrictions are strongly disfavored and are often subject to strict scrutiny.   Indeed, in the typical case, "[c]ontent-based regulations are

---

[94]     *Naser Jewelers, Inc. v. City of Concord, New Hampshire*, 513 F.3d 27, 32 (1st Cir. 2008).

presumptively invalid."[95] And when the government "seeks to restrict speech based on its content" that "the usual presumption of constitutionality afforded [legislative] enactments is reversed."[96]

In *Sorrell v. IMS Health, Inc.,* the Supreme Court emphasized the necessity of applying heightened scrutiny when reviewing speaker and content-based burdens on commercial speech. Addressing a Vermont statute which restricted the sale, disclosure, and use of pharmacy records that reveal the prescribing practices of individual doctors, the Court concluded that "[t]he law on its face <u>burdens disfavored speech by disfavored speakers</u>," and "[i]t follows that heightened judicial scrutiny is warranted."[97] The Court

---

[95]    *R.A.V. v. City of St. Paul,* 505 U.S. 377, 382 (1992).

[96]    *Playboy Entm't Group,* 529 U.S. at 817.

[97]    *Sorrell v. IMS Health, Inc.*, ___ U.S. ___, 131 S.Ct. 2653 (2011), citing *Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 418, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993) (applying heightened scrutiny to "a categorical prohibition on the use of newsracks to disseminate commercial messages"); *id.*, at 429, 113 S.Ct. 1505 ("[T]he very basis for the regulation is the difference in content between ordinary newspapers and commercial speech" in the form of "commercial handbills .... Thus, by any commonsense understanding of the term, the ban in this case is 'content based' " (some internal quotation marks omitted)); see also *Turner Broadcasting System, Inc. v. FCC,* 512 U.S. 622, 658, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994) (explaining that strict scrutiny applies to regulations reflecting "aversion" to what "disfavored speakers" have to say). The Court has recognized that the "distinction between laws burdening and laws banning speech is but a matter of degree" and that the "Government's content-based burdens must satisfy the same rigorous scrutiny as its content-based bans." *United States v. Playboy Entertainment Group, Inc.,* 529 U.S. 803, 812, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000). Lawmakers may no more silence unwanted speech by burdening its utterance than by censoring its content. See *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.,* 502 U.S. 105, 115, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991) (content-based financial burden); *Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue,* 460 U.S. 575, 103 S.Ct. 1365, 75 L.Ed.2d 295 (1983) (speaker-based financial burden).

further observed "[s]o long as they do not engage in marketing, many speakers can obtain and use the information.  But detailers cannot.  [Thus, the law] imposes a speaker- and content-based burden on protected expression, and that circumstance is sufficient to justify application of heightened scrutiny."[98]

In reaching this conclusion, *Sorrell* engaged in a two-step inquiry. First, the Court considered whether the government regulation restricting speech was content- and speaker-based.[99] The Court held that it was; the regulation was therefore subject to heightened scrutiny and was "presumptively invalid."[100] Second, the Court observed "[i]n the ordinary case, it is all but dispositive to conclude that a law is content-based."[101]

The Second Circuit has since applied *Sorrell*'s heightened scrutiny to strike down federal "misbranding provisions to prohibit and criminalize the promotion of off-label drug use." ("we conclude that the government's construction of the FDCA's misbranding provisions imposes content- and speaker-based restrictions on speech subject to heightened scrutiny. Second, we conclude the government cannot justify a criminal prohibition of off-label promotion even under *Central Hudson's* less rigorous intermediate test.").[102]  This was because "[u]nder this construction, speech about the

---

[98]    *Sorrell,* supra., at 2667.

[99]    *See id.* at 2662–64.

[100]    Id.

[101]    Id.

[102]    *United States v. Caronia,* 703 F.3d 149 (2d Cir. 2012).

government-approved use of drugs is permitted, while certain speech about the off-label use of drugs—that is, uses not approved by the government—is prohibited, even though the off-label use itself is not."[103]    Second, the Court explained, "this construction is speaker-based because it targets one kind of speaker—pharmaceutical manufacturers—while allowing others to speak without restriction."[104]    Finally, the Court added that "a claim to First Amendment protection here is more compelling than in *Sorrell* because this case involves a criminal regulatory scheme subject to more careful scrutiny."[105]    Likewise, in March of 2013, in *Valle Del Sol Inc. v. Whiting*, the Ninth Circuit concluded that Arizona's Day Labor regulations were content-based restrictions of speech, subject to heightened *Sorrell* scrutiny and presumptively invalid.[106]

Here, the PMDA burdens and suppresses commercial speech on the basis of who is speaking and what is being stated.    First and foremost, the Act imposes significant burdens in response to "advertising" and "solicitation" related to the proposed purchase

---

[103]    Id.

[104]    Id. (The Court elaborated " In *Sorrell,* pharmaceutical companies were barred from obtaining and using prescriber-identifying information for marketing purposes, but a wide range of other speakers, including private and academic researchers, could acquire and use the information.  Similarly, here, because off-label prescriptions and drug use are legal, the government's application of the FDCA permits physicians and academics, for example, to speak about off-label use without consequence, while the same speech is prohibited when delivered by pharmaceutical manufacturers.")

[105]    *Id.,* citing *Humanitarian Law Project,* 130 S.Ct. at 2724.

[106]    *Valle Del Sol Inc. v. Whiting*  --- F.3d ----, 2013 WL 781704, C.A.9 (Ariz.), 2013. (March 4, 2013).

of precious metals. It does not punish *educational* speech related to precious metals. Nor does it even punish promotional speech offering to *sell or trade* precious metals. Nor does punish advice that one should buy, sell, or even steal precious metals. It only suppresses <u>promotional speech offering to *buy* precious metals</u>.

Secondly, the does so selectively - - on the basis of who is speaking. As just one example (R.C. 4728.11 contains several), pursuant to R.C. 4728.11(B)(1)(b), jewelers and others remain free to promote their businesses by indicating to the public, though advertising, solicitation, and otherwise, "we buy gold and silver" Thus, a jeweler who buys one hundred *tons* of gold may advertise to no end without triggering the burdens of the licensing scheme, while a coin dealer who buys one hundred *ounces* of gold is burdened by the licensing scheme once he advertises. However, "[l]aws designed or intended to suppress or restrict the expression of specific speakers contradict basic First Amendment principles."[107]

Finally, as the *Caronia* court explained, "criminal regulatory schemes, moreover, warrant even more careful scrutiny."[108]   Here, the PMDA punishes speakers with

---

[107]    *United States v. Playboy Entm't Group,* 529 U.S. 803, 812 (2000).

[108]    *See Holder v. Humanitarian Law Project,* —— U.S. ——, 130 S.Ct. 2705, 2724, 177 L.Ed.2d 355 (2010) (applying more rigorous scrutiny); *id.* at 2734 (Breyer, *J.,* dissenting) ("It is not surprising that the majority, in determining the constitutionality of criminally prohibiting the plaintiffs' proposed activities, would apply ... a more demanding standard. Indeed, where, as here, a statute applies criminal penalties ... I should think we would scrutinize the statute and justifications strictly." (internal quotation marks and citations omitted) (citing cases)); *see also City of Houston v. Hill,* 482 U.S. 451, 459, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) ("Criminal statutes must be scrutinized with particular care." (internal citations omitted)).

criminal prosecution: it is an essential element to a criminal conviction that a purchaser of precious metals hold himself out to the public, through advertising, solicitation, or otherwise, as willing to purchase precious metals.    Thus, heightened scrutiny is required.

## 2.  The PMDA fails *Central Hudson* scrutiny.

And even if the PMDA's suppression of speech were neither content nor identity-based, the suppression would still fail scrutiny under the test pronounced by the Supreme Court in *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*[109] *Central Hudson* set forth a four-part test for evaluating a restriction of commercial speech:

> At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading.  Next, we ask whether the asserted governmental interest is substantial.  If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.[110]

---

[109]     *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980). The DOC contends that the Court's analysis of the PMDA should be pursuant to *United States v. O'Brien*, 391 U.S. 367 (1968), and not *Central Hudson.*  (Appellants' Brief, at 22-23.)  But the DOC fails to posit any test for distinguishing speech from conduct; perhaps this omission is purposeful, since, by any standard, speech is at issue here.  For the Supreme Court has explained that "[t]o qualify as a regulation of communicative action governed by the scrutiny outlined in *O'Brien,* the State's regulation must be unrelated to expression."  *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 567 (2001).

[110]     *Central Hudson,* 447 U.S. at 566.

"On each point, the government bears the burden of establishing the constitutionality of its regulatory scheme."[111]  Despite carrying this burden, in its appellate brief, the DOC devoted less than a single page to providing a conclusory discussion of all four factors under *Central Hudson*.[112]  But "[i]t is 'a settled appellate rule that issues averred to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'"[113]  Through failure to develop a substantive argument in favor of the PMDA, the DOC, if not having waived the argument entirely, has certainly failed to carry its burden under *Central Hudson*, much less under the heightened scrutiny demanded here by *Sorrell*.  Nevertheless, Liberty Coins will perform the legal analysis demonstrating that the PMDA impermissibly restricts commercial speech.

Turning to the elements of *Central Hudson,* as a threshold matter, speech indicating "we buy gold," or its equivalent, is neither inherently unlawful, false, or misleading because (1) Liberty Coins and others do not hold themselves out as "licensed;" and (2) it is perfectly legal to purchase precious metals in Ohio, so long as one does not promote that he does so.[114]  None of the precedents or arguments proposed

---

[111]     *Pagan v. Fruchey*, 492 F.3d 766, 771 (6th Cir. 2007)

[112]     Appellants' Brief, at 25.

[113]     *Spirko v. Mitchell*, 368 F.3d 603, 612 (6th Cir. 2004) (quoting *United States v. Elder,* 90 F.3d 1110, 1118 (6th Cir. 1996).

[114]     See *Parker v. Commonwealth of Ky.,* 818 F.2d 504, 509 (6th Cir.1987); *Peel v. Attorney Registration and Disciplinary Commission of Illinois,* 496 U.S. 91, 106, 110 S.Ct. at 2290; and *Abramson v. Gonzalez* 949 F.2d 1567 (11th Cir. 1992).

by the DOC contravene these basic facts, and the robust precedent - - *Parker,* *Abramson,* and *Peel* - - in Liberty Coins' favor.

### a. The governmental interests cited are not directly advanced by the PMDA.

This part of *Central Hudson* requires the Court to "identify with care the interests the [state] itself asserts" for the restriction on speech; it may not "supplant the precise interests put forward by the [state] with other suppositions."[115] The Supreme Court has repeatedly emphasized the substantial burden this requirement places on the proponent of a restriction on commercial speech.[116] The burden is on the state to show that the suppression of advertising "will in fact alleviate ... to a material degree" the harms identified.[117] Further, "the government must come forward with some quantum of evidence, beyond its own belief in the necessity for regulation, that the harms it seeks to remedy are concrete and that its regulatory regime advances the stated goals."[118] For "*Central Hudson* requires more from the government than bald assertions that a particular speech restriction serves its articulated interests."[119] "[T]he regulation may not be sustained if it provides only ineffective or remote support for the government's

---

[115]     *Edenfield v. Fane,* 507 U.S. 761, (1993).

[116]     *See Ibanez,* 512 U.S. at ----, 114, and cases collected therein.

[117]     *Fane,* 507 U.S. at ----, 113 S.Ct. at 1800.

[118]     Id.

[119]     Id. at 772.

purpose."[120]   Thus, "the Court has declined to uphold regulations that only indirectly advance the state interest involved."[121]

Here, the DOC has asserted that its interests being served by the PMDA are "protecting consumers and the public from theft, fraud, money laundering, fencing, restricting the flow of stolen goods, and even terrorism."[122]  Liberty Coins concedes that these matters are substantial governmental interest.[123]  But the DOC flagrantly fails to demonstrate that these interests are directly advanced by the PMDA's speech-triggered regulatory regime.

As when before the District Court, the DOC offers nothing more than superficial and conclusory assertions for the proposition that the PMDA's speech-triggered regulations directly advance the interests asserted above.  Specifically, the DOC simply claims that "the PMDA's provisions directly advance the substantial state interests through licensure that enables regular and effective State oversight through record keeping and reporting requirements."[124]

---

[120]     *Central Hudson,* 447 U.S. at 564.

[121]     *Id.*

[122]     Appellants' Brief, at 25.

[123]     Though Liberty Coins would agree with the admonition of the District Court: "terrorism is far too serious an issue to be loosely invoked without substantiating evidence."  Opinion & Order, R. 27, at 19 n.11, PageID#615.

[124]     Appellants' Brief, at 25.

The District Court correctly observed the inadequacy of these claims, and the clear failure of the PMDA to directly advance the interests articulated by the DOC:

> The [PMDA] does not require all those purchasing precious metals to be licensed, despite the fact that Defendants admit "the legitimate State interest is the same regardless of the amount of previous metals purchased from the public and regardless of whether the person advertises or solicits that he is willing to purchase such articles." <u>Subjecting only those who engage in commercial speech to the licensing requirement, and therefore the record keeping and retention requirements, at best indirectly advances the State's interest</u> * * * In sum, Defendants have not produced evidence demonstrating how holding one's self out [to the public] as willing to purchase precious metals contributes to the evils the State seeks to prevent, either through studies, statistics, crime reports, or otherwise. Moreover, Defendants have not shown how requiring a license only for purchasers of previous metals who engage in commercial speech directly and materially advances those interests.[125]

And the District Court's decision is supported by robust controlling precedent.

First, regulating on the basis of speech to curtail conduct not "direct." As the Supreme Court explained in *Thompson v. Western States Medical Center* "we have made clear that if the Government could achieve its interests in a manner that does not restrict speech, or that restricts less speech, the Government must do so."[126] In *Rubin v. Coors Brewing Co.,* for example, the Court found a law prohibiting beer labels from displaying alcohol content to be unconstitutional in part because of the availability of alternatives "such as directly limiting the alcohol content of beers, prohibiting marketing efforts emphasizing high alcohol strength ..., or limiting the labeling ban only

---

[125]     Opinion & Order, R. 27, at 19-20, PageID#615-16.

[126]     Thompson, *supra.*

to malt liquors."[127]   The fact that "all of [these alternatives] could advance the Government's asserted interest in a manner less intrusive to ... First Amendment rights" indicated that the law was "more extensive than necessary."[128]   Here, as established above, the PMDA is imposed only once a business that purchases precious metals engages in protected commercial speech.

Second, in *Pagan v. Fruchey*, this Court, *en banc*, rejected nominal unsubstantiated evidence of direct advancement of state interests as a sufficient means for the state to carry it burden.  There, the Court found insufficient, in support of a law prohibiting posting of commercial speech ("for sale" signs) in cars parked on city street, an affidavit claiming as follows:

> The primary purpose of the Ordinance is to promote the goal of traffic safety within the Village of Glendale. The objective of the Ordinance is to prohibit attractions or activities which will induce people to come into the roadway who are not a part of normal vehicular or pedestrian traffic, such as individuals washing or repairing their cars which are parked on the street, or individuals who are looking over a motor vehicle which is displaying a for sale sign parked on the street. In addition ..., the Ordinance also addresses aesthetic objectives of the Village of Glendale.[129]

Specifically, the Court explained that "The Fruchey affidavit amounts to nothing more than a conclusory articulation of governmental interests. While it suffices for the second part of the *Central Hudson* test by identifying two substantial government interests, it

---

[127]   514 U.S. 476, at 490, 491 (1995).

[128]   *Id.,* at 491; See also *44 Liquormart, Inc. v. Rhode Island,* 517 U.S., at 50.

[129]   *Pagan v. Fruchey,* 492 F.3d 766 (6th Cir. 2007).

fails to address the third prong at all: that is, how the particular restriction chosen by Glendale *directly and materially advances those interests*."[130]

Similarly here, the DOC's assertions of potential harm to the public, and facilitation of stolen property and terrorism by virtue of *signs indicating an interest in purchasing precious metals* is "simple conjecture * * * about something that might occur."[131]  While the DOC may simply be advancing a belief that direct advancement is "common sense" to it, "the difficulty with this proposition, however, is that the standard established by the Supreme Court depends neither on what is "obviousness" nor "common sense" to government officials.  Instead, the Supreme Court's *Edenfield* precedent requires *some* evidence to establish that a speech regulation addresses actual harms with some basis in fact."[132]  And for this reason, under the commercial speech doctrine in the Sixth Circuit, "*the [state]* is the party responsible for accumulating this evidentiary record. A court's role is not to search for evidence that a party *could* have located and submitted but did not. Nor should a court base its decision on an evidentiary record of its own creation."[133]  Thus, simply waiving the banter of "protecting the public," "preventing theft," or "stopping terrorism" does not invoke some talismanic

---

[130]     Id.

[131]     Id.

[132]     Id. (observing that "an ordinance's long tenure cannot excuse the need for some justification, even though that justification need not come in the form of an "elaborate study" or a recitation of past problems.")

[133]     Id. *Cf. Edenfield,* 507 U.S. at 768.

quality that, under case precedents, legitimizes all regulations of commercial speech and relieves the state from making the showing required by the United States Supreme Court.

Meanwhile, both of the state's Civ. R. 30(B) witnesses confirmed that they knew of no statistics verifying any type of correlation between precious metals and crime, *much less speech about precious metals* and crime.[134]  And, none of the newspaper articles that the state tendered as evidence to the District Court demonstrate that curtailing *speech* is a *direct* method of addressing the asserted state interests.

As the Ninth Circuit explained just one month ago, "we acknowledge that Arizona has a real and substantial interest in traffic safety. Arizona, however, has failed to justify a need to serve that interest through targeting and penalizing day labor solicitation that blocks traffic, rather than directly targeting those who create traffic hazards without reference to their speech, as currently proscribed under the State's preexisting traffic laws. Laws like this one that restrict more protected speech than is necessary violate the First Amendment."[135]

The same is true here.  While the state maintains an interest in prohibiting theft and sale of stolen property, that interest is simply *not directly advanced* by imposing a regulatory scheme on the basis of advertising:  if purchases are the evil, then purchases should be the inflection point of regulation; and if just purchases of stolen goods are the

---

[134]    11/29/12 Hearing Transcript, R.26, at 16, 58-62.

[135]    --- F.3d ----, 2013 WL 781704 (9th Cir. 2013).

evil, than that is where the inflection point must be.  Regulating only in response to advertising is inherently "indirect," and thus impermissible under *Central Hudson.*

To this end, there are far more obvious *direct* ways to guard against and track theft, and recover stolen property, than by punishing advertising -- the state is of course free to *directly* prohibit the target of its interests:  the purchase of stolen gold or silver by anyone.  In fact, there is already a criminal law addressing this subject in Ohio:  R.C. 2913.51 ("Receiving Stolen Property") states "No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."  The state's enforcement of this law against gold and silver purchasers would be a direct means of effectuating the state interests of curbing theft.  Likewise, a similar criminal or civil prohibition that dispensed with the *mens rea* requirement would still be more direct than burdening a certain class of businesses *on the basis of their protected speech*.

Thirdly,  a state actor must do more than "assert[] interests [that] are important in the abstract."[136]  Courts do not recognize an interest as significant if it is merely "conjectural" rather than "real."[137]  Thus, there is no government interest, much less a substantial or compelling one, in suppressing *speech* to curb the *potentiality* of theft, fencing, etc.  Indeed, the Supreme Court has noted that "undifferentiated fear or

---

[136]    *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994).

[137]    Id.

apprehension of a disturbance is not enough to overcome the right to freedom of expression."[138]  Here, the DOC fails to cite anything other than "fear or apprehension" of advertising-induced theft or terrorism.  This is plainly insufficient.

Finally, the notion that the PMDA directly advances the interest cited by the state interest is undermined by the "jeweler exemption":  the PMDA permits jewelers to purchase precious metals, and to advertise that they do so, without restriction.[139]  Jewelers can advertise "we buy gold" without a PMDA license, and in fact, can purchase significantly more precious metals, of any type, without having to obtain a PMDA license, than a coin dealer that is subject to the PMDA.  The states supplies no explanation for this distinction.   Were the curtailment of speech a direct means of advancing the state's interests in preventing theft, etc., the PMDA would also curtail the speech of jewelers and others who buy significant amounts of precious metals.

In closing, the DOC even *admits* that the state's interests are not directly advanced through regulating Liberty Coins' speech, conceding "Ohio's government interest is unrelated to the suppression of free expression."[140]  Liberty Coins concurs:  the state's interests in guarding against theft and recovering stolen property should not be applied by means of whether or not a particular purchaser of precious metals

---

[138]    *Tinker v. Des Moines Indep. Cmty. Sch. Dist,* 393 U.S. 503, 508 (1969).

[139]    Tr. 46-50.

[140]    Appellants' Brief, pp. 24, 31.

advertises to the public. Thus, because the PMDA's suppression of speech does not directly advance any state interest, the District Court appropriately concluded that Liberty Coins has demonstrated a substantial likelihood of success on the merits of its challenge to the PMDA.[141]

**b. The PMDA is not narrowly-tailored to advance the government interests cited.**

Finally, *Central Hudson* requires that a regulation of commercial speech "extend only as far as the interest it serves," or be "narrowly tailored."[142] To be narrowly

---

[141]    Opinion & Order, R. 27, at 20, PageID#616. The DOC also takes issue with the District Court limiting its consideration as substantive evidence certain newspapers articles that the DOC had tendered. (Appellants' Brief, at 26-27.) The District Court acknowledged the publication of the articles, but, in a clear exercise of discretion, did not go so far as to blindly accept the truth of every statement and assertion within those articles. (Opinion & Order, R.27, at 20 n.12, PageID#616.) And in complaining about the District Court's limitation on the use of the newspaper articles, the DOC has not argued, let alone established, that this action by the District Court constituted an abuse of discretion. *See Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988)("[i]t was within the discretion of the district court to accept this hearsay for purposes of deciding whether to issue the preliminary injunction"). Additionally, the relaxed evidentiary standard for preliminary injunction proceedings usually concerns the consideration of affidavits which would not normally be admissible at trial. *See In re DeLorean Motor Co*., 755 F.2d 1223, 1230 n.4 (6th Cir. 1985)(citing to 11 C. Wright & A. Miller, Federal Practice and Procedure Sec. 2949 (1973) for the proposition that affidavits may be used to support preliminary injunction with the notation that a "trial court should be allowed to give even inadmissible evidence some weight"); *Ty, Inc. v. GMA Accessories, Inc.,* 132 F.3d 1167, 1181 (7th Cir. 1997)("are ordinarily inadmissible at trials but they are fully admissible in summary proceedings, including preliminary-injunction proceedings"). In summation, the District Court did not abuse its discretion in how and to what extent it considered the subject newspaper articles.

[142]    *Central Hudson,* supra.

tailored, a regulation must not "burden substantially more speech than is necessary to further the government's legitimate interests."[143]

### i. A speech regulation is not narrowly tailored simply because it burdens rather than bans speech.

First, Appellants claim that the PMDA's speech-triggered burdens are narrowly tailored *only because* "the Act does not *ban* commercial speech," but only requires a license, and licensing requirements "are not onerous."[144] This is misguided.

Imposing licensing and regulatory burdens on those who speak, is every bit as actionable under the commercial speech doctrine as is an outright ban on speech. The Supreme Court in *Sorrell* found it sufficient that "[t]he law on its face *burdens* disfavored speech by disfavored speakers," and a "*burden* on protected expression," was even sufficient to justify application of "heightened scrutiny."[145] In *Thompson v. Western States Medical Center,* the Supreme Court rejected an identical defense in protecting commercial speech.[146] There, the "provisions use[d] advertising as the trigger for requiring FDA approval-essentially, as long as pharmacists do not advertise particular compounded drugs, they may sell compounded drugs without first undergoing safety and efficacy testing and obtaining FDA approval. If they advertise their

---

[143]   *Id.* at 799.

[144]   Appellants' Brief, p. 32.

[145]   *Sorrell,* supra.  Emphasis Added.

[146]   535 U.S. 357, 122 S.Ct. 1497 (U.S.,2002).

compounded drugs, however, FDA approval is required."[147]    The Court stridently rejected this defense, along with the regulatory scheme "conditioning an exemption from the FDA approval process on refraining from advertising."[148]

Here, the regulatory scheme works identically: those who refrain from advertising to the public are exempt, but those who indicate to the public an interest in purchasing precious metals are burdened with subjection to the onerous regulatory scheme.    And indeed, contrary to the DOC's assertion, these burdens - - which include steep fines, heavy regulation, daily reporting requirements to police, and subjection to probing warrantless searches and seizures, are, as described in the Statement of Facts above, quite "onerous."    Moreover, the DOC doesn't even begin to demonstrate that the imposition of these burdens *only when an Ohio business speaks,* is narrowly tailored.

### ii. *Regulating commercial speech does not address "the evils" with which the state claims concern.*

A "[policy] is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy."[149]    Here, Appellants contend that "the sources of evil," presented by the purchase (and apparently speech encouraging the purchase) of

---

[147]    Id.

[148]    Id.

[149]    *Frisby v. Schultz*, 487 U.S. 474, 485 (1988).

precious metals are "theft, fraud, money laundering, fencing, restricting the flow of stolen goods, and even terrorism."[150]

While the state may well have an interest preventing the aforementioned evils, *this* licensing regime does not do so in a narrowly tailored manner. Despite carrying the burden of proving the sufficient narrowness of *this* regulation in addressing the evils it cites, the DOC fails to explain why it is necessary for the PMDA as written and enforced, to burden, suppresses, and prohibits protected speech, when of course, all of the aforesaid evils can be prevented through registration and oversight requirements unrelated to whether an Ohio business engages in promotional speech.

*First*, the PMDA is not narrowly tailored because it, identically to the policies struck down in *United States v. Caronia*, suppresses speech related to conduct that it does not regulate. Specifically, the PMDA burdens speech by requiring licensure in response to it, even if that speech proposes a transaction that is *exempt* from the Act. For instance, R.C. 4728.11(F) actually exempts from regulation purchases of "any purchase of coins, hallmark bars, registered ingots, and other items as numismatic objects." And indeed, the District Court received evidence that such purchases comprise the vast majority of the gold and silver purchased by Liberty Coins. Yet, because Liberty Coins advertised an interest in purchasing these items through signage indicating "We buy gold," - -  a truthful, accurate, and effective way of communicating such an interest - -  the DOC indicated to Liberty Coins that it had violated the PMDA

---

[150]    Appellants' Brief, at 25.

and owed a fine.  Likewise, R.C. 4728 permits Liberty Coins and others, without a license, to purchase gold and silver from other precious metals dealers.  However, the plain language of the statute prohibits Liberty Coins and others from, without triggering the burdens of the PMDA, advertising to those would-be dealers through indicating, by general promotional materials, anything akin to "we buy gold and silver."  Regulating speech expressing an interest in consummating transactions that are not regulated, and therefore does not produce "the evils" the statute seeks to cure, is not narrowly tailored.

*Secondly*, there is no means by which the state could demonstrate that "the speech banned by the statute poses a greater threat to the [state's] interest than the speech permitted by the statute."  There are many exemptions to the PMDA.  For instance, pursuant to R.C. 4728.11(B)(4)(b), jewelry stores are exempt from the Act.  This means that these stores are not subjected to PMDA regulations, even if they buy infinitely more gold and silver than those regulated by the Act, and even if they engaged in infinitely more advertising proposing such transactions.  Thus any argument that burdening the speech of Liberty Coins and others is a narrowly tailored means to cure the evils that concern the DOC is undermined by the fact that all Ohio jewelers remain free to advertise "we buy gold," and then actually purchase precious metals, without the PMDA regulations.

*Third,* the burdening of only those who engage in commercial speech is not a narrowly tailored means of guarding against theft, etc. because the target of the regulation is not those who *buy* gold and silver, but rather, those who *advertise* to the

51

public an interest in buying gold and silver.  An Ohioan may purchase significantly more gold than Liberty Coins, without burden, if he or she simply does not advertise to the public that he or she does so.  To this end, the statute would seem to *encourage* the underground trafficking of stolen gold and silver (sale to criminals who do not advertise to the public), while punishing traditional law-abiding retail store owners.

*Fourth,* the PMDA is not narrowly tailored because the amount of beneficial speech suppressed by the act is staggering.  Prohibiting small business owners from posting self-made signs in their storefront windows, and even handing business cards to colleagues, merely because those signs and cards contain the slogan "I buy gold and silver" puts such business owners in an impermissible strait-jacket.  Further, it prohibits advertising communicating the willingness to purchase gold and silver items that are entirely exempt from the act, and thus ultimately burdens speech that is clearly beneficial to the public, by making it aware of the existence of a legitimate business that may wish to purchase items that the public may wish to sell.  Thus the Act, and enforcement thereof, is not narrowly tailored to prevent theft of gold and silver jewelry, etc. because it prohibits speech (and ostensibly conduct) pertaining to gold and silver items not targeted by (and exempt from) the Act.

For each of these reasons, amongst others, this Court should find that the District Court, in alignment with the precedents established in *Pagan, Parker, Central Hudson, Sorrell, Western States, Caronia, Valle Del Sol Inc., MD II Entertainment Inc.*, properly

found the PMDA to be insufficiently narrowly tailored to withstand *Central Hudson* scrutiny.

Because the PMDA regulates in response speech, does not directly advance a substantial state interest, is not narrowly tailored to achieve a substantial state interest, and criminalizes speech on the basis of its content and the identity of the speaker, the District Court correctly concluded that Liberty Coins is likely to prevail on the merits, and its Order preliminarily enjoining the majority of the PMDA must be upheld.

Moreover, the District Court correctly determined that the PMDA was *facially* unconstitutional.   The Supreme Court addressed the proper facial analysis of First Amendment cases such as this in *U.S. v. Stevens.*  There, the Court explained as follows:

> Neither *Salerno* nor *Glucksberg* is a speech case. Here the Government asserts that Stevens cannot prevail because § 48 is plainly legitimate as applied to crush videos and animal fighting depictions. Deciding this case through a traditional facial analysis would require us to resolve whether these applications of § 48 are in fact consistent with the Constitution. In the First Amendment context, however, this Court recognizes "a second type of facial challenge," whereby a law may be invalidated as overbroad if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep."[151]

Here, at minimum, a substantial number of the Act's applications are unconstitutional.  Specifically, the suppression of all advertising - - every "we buy gold" sign, business card, newspaper advertisement, and billboard in the state of Ohio, for instance - - would be more than sufficient to demonstrate that "a substantial number" of

---

[151]    *U.S. v. Stevens*, 130 S.Ct. 1577 (2010).

the [PMDA's] applications unconstitutionally suppress protected speech.  Consequently, the District Court's Order must be upheld.

### ii. The District Court correctly determined that Liberty Coins is faced with irreparable harm.

The District Court correctly concluded that Appellees faced the prospect of irreparable harm without the issuance of the preliminary injunction.  First, the Court correctly observed precedent indicating that "a violation of First Amendment rights, even for a short time, causes irreparable harm,"[152] and "even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief."[153]  Further, the Court, carefully weighing the evidence presented, found as follows:

> The inability to operate a business without fear of prosecution, the decreased business, and the fact that continued operation of the business absent a TRO or preliminary injunction could impede Plaintiffs' ability to obtain a license in the future, demonstrates an irreparable harm.[154]

 Yet on appeal, the DOC does not challenge (or even acknowledge) the foregoing bases which the District Court expressly found to be sufficient to constitute an irreparable harm to justify the issuance of the preliminary injunction.  Thus, on this front, the DOC

---

[152]  *Baker v. Adams County/Ohio Valley Sch. Bd*., 310 F.3d 927, 930 (6th Cir. 2002) *citing Elrod v. Burns,* 427 U.S. 347, 373 (1976).

[153]  *Miller v. City of Cincinnati*, 622 F.3d 524, 540 (6th Cir. 2010); *Newsom v. Norris,* 888 F.2d 371, 378 (6th Cir.1989).

[154]  Opinion & Order, R.27, at 24, PageID#620.

quite clearly fails to carry its burden of demonstrating that the District Court abused its discretion in finding irreparable injury.

### iii. The Public Interest and interests of third parties favor an injunction.

The Appellants speculative, unclear, and hearsay-laden affidavit is not persuasive, except for what it lacks.  Instead, Sixth Circuit precedent militates in favor of the PMDA remaining enjoined, insofar as the District Court has done so, because "it is always in the public interest to prevent violation of a party's constitutional rights."[155] This Circuit has also concluded as follows, as to First Amendment cases:

> We have previously explained that because 'the public as a whole has a significant interest in ensuring equal protection of the laws and protection of First Amendment liberties ... the public interest would be advanced by issuance of a preliminary injunction enjoining enforcement of those portions of challenged statutes that are of questionable constitutionality.'"[156]

Thus, maintenance of an injunction that protects Ohioans' First Amendment rights is in the public's interest.  Moreover, (1) significant PMDA regulations in R.C. 4728.12 (which the District Court determined to be severable); and (2) the criminal prohibitions against theft and Receipt of Stolen Property remain intact.

## VI.   CONCLUSION

For the foregoing reasons, the District Court's Order preliminarily enjoining enforcement of the majority of the Precious Metal Dealers Act must be upheld.

---

[155]    *Connection Distributing Co. v. Reno,* 154 F.3d 281, 288 (6th Cir.1998)

[156]    *Jones v. Caruso,* 569 F.3d 258 (6th Cir. 2009), *Dayton Area Visually Impaired Persons, Inc. v. Fisher,* 70 F.3d 1474, 1490 (6th Cir.1995).

Respectfully submitted,

/s/ Maurice A. Thompson
Maurice A. Thompson
1851 CENTER FOR CONSTITUTIONAL LAW
208 E. State Street
Columbus, Ohio 43215
Tel: (614) 340-9817
Fax: (614) 365-9564
MThompson@OhioConstitution.org

Curt C. Hartman
THE LAW FIRM OF CURT C. HARTMAN
3749 Fox Point Court
Amelia, Ohio 45102
(513) 752-8800
*hartmanlawfirm@fuse.net*

*Attorneys for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE – FED. R. APP. 32(A)(7)

I hereby certify that, pursuant to Fed. R. App. 32(A)(7), that the foregoing Appellees' Brief contains less than 13,899 words and is otherwise in compliance with Fed. R. App. 32(A)(7).

/s/ Maurice A. Thompson

# APPENDIX

## *Designation of Relevant District Court Documents*

In accordance with 6 Cir. R. 30(b), Appellant hereby designates the following relevant district court documents.

| District Court Docket | Description | PageID# |
|---|---|---|
| Record Entry No.   1 | Complaint | 1-28 |
| Record Entry No.   1 | Complaint, Exhibit A | 29-32 |
| Record Entry No.   1 | Complaint, Exhibit B | 33 |
| Record Entry No. 23-1 | Joint Exhibits | 339-351 |
| Record Entry No. 23-4 | Joint Exhibits | 394-445 |
| Record Entry No. 26 | 11/29 Hearing Transcript | 474-596 |
| Record Entry No. 27 | Opinion & Order | 597-624 |
| Record Entry No. 35 | Opinion & Order | 667-680 |
| Record Entry No. 36 | Notice of Appeal | 681 |

## **CERTIFICATE OF SERVICE**

     I certify that a copy of the foregoing will be served upon all counsel of record via the Court's electronic filing system on the date of filing.

/s/ Maurice A. Thompson